AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by _____ D.
DEC 10 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

United States of America )
v. )
ALI JABER, HADI JABER, and ) Case No. 13-8506-DLB
DANIEL VELAZQUEZ )
)
)
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __2009 through present__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Hanjaratu Small, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12-9-13

_____
*Judge's signature*

City and state: West Palm Beach, Florida    Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Hanjaratu Small, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the United States Department of Treasury, Internal Revenue Service (IRS), Criminal Investigation, and have been so employed for approximately thirteen years. My responsibilities include the investigation of possible violations of the Internal Revenue laws, the Bank Secrecy Act, the money laundering statutes, and other financial crimes including bankruptcy fraud, mail fraud, wire fraud, and related crimes. I have personally investigated and assisted in investigations in relation to violations of these statutes. In addition, I have attended seminars relative to these laws and their violations. Prior to my employment as a Special Agent, I was an IRS Revenue Agent for twelve years and a Tax Auditor for one.

2. I submit this affidavit based upon information known to me personally from the investigation, as well as information obtained from other law enforcement officers who have investigated this matter, including agents from the United States Department of Agriculture ("USDA"), the United States Department of Health and Human Services ("HHS"), and the Palm Beach County Sheriff's Office ("PBSO"), and other individuals who have personal knowledge of the facts herein which Applicant believes to be reliable, and which is summarized herein.

3. The purpose of this affidavit is to establish that there is probable cause to believe that ALI JABER, HADI JABER and DANIEL VELAZQUEZ did knowingly conspire to defraud an agency of the United States, to wit, the USDA; in violation of 18 U.S.C. § 371.

## BACKGROUND

4. ALI JABER and HADI JABER are brothers who operate a grocery store known as Jaber Enterprises, Inc. d/b/a Fajita's Meat & Fish ("Fajita's"), located at 3921 10th Ave North, Palm Springs, Florida 33461, in Palm Beach County, in the Southern District of Florida. Although the legal address of the property is Palm Springs, Florida, the property is sometimes listed by ALI JABER and HADI JABER as being located in Lake Worth, Florida.

5. Jaber Enterprises, Inc. was incorporated in the State of Florida on or about July 10, 2006. ALI JABER was the sole Officer, Director, President and Registered Agent of Jaber Enterprises, Inc., from in or about 2006 through in or about 2009. HADI JABER was the sole Officer, Director, President and Registered Agent of Jaber Enterprises, Inc., from in or about 2009 through in or about 2010. M. J., the brother of ALI and HADI JABER, became the President of Jaber Enterprises, Inc. in or about 2010 and is currently the President.

6. DANIEL VELAZQUEZ is an employee of Fajita's.

## FAJITA'S AND THE SNAP FOOD STAMP PROGRAM

7. Fajita's is an authorized retailer for the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program.

8. SNAP is a program established and funded by the United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS") for the purpose of affording low and middle income households the opportunity to achieve a more nutritious diet by increasing their ability to purchase food. SNAP benefits can only be used toward the purchase of eligible foods. Eligible foods include any food or food product intended to be prepared and eaten at home, such as breads and cereals; fruits and vegetables; meat, fish and poultry; and dairy products. SNAP benefits cannot be used to purchase alcoholic beverages, tobacco products,

nonfood items such as cosmetics and other household goods, and food that is hot or to be eaten in the store. USDA rules and regulations specifically prohibit the exchange of SNAP benefits for cash.

9. USDA is an agency of the United States, and FNS is an agency within the USDA. In Florida, SNAP is administered through the Florida Department of Children and Families on behalf of the federal government.

10. SNAP recipients collect their benefits through Electronic Benefit Transfer ("EBT") cards which operate like debit cards and which contain specific identifying data. Each SNAP recipient is also issued a unique Personal Identification Number ("PIN"). On a monthly basis, each EBT card is credited with a dollar amount to be used for the purchase of eligible food items.

11. Authorized retailers use Point of Sale ("POS") devices at which SNAP recipients swipe their EBT cards and enter their unique PIN. Each authorized retailer also has a unique SNAP authorization number associated with the POS. SNAP transaction information from the POS devices are sent via electronic transmission to processors designated by USDA, who then send SNAP proceeds to bank accounts designated by the authorized retailer.

12. Authorized retailers for the SNAP program, such as Fajita's, are required to be approved by the FNS. As part of the application approval process, a representative of the retailer is required to sign a "Food Stamp Grocer Education Confirmation" document. By signing the document, the representative confirms that he will ensure that "…current and future owners, operators, corporate officers and clerks …" are properly trained as to what items can and cannot be purchased using SNAP benefits with the EBT card, including the prohibition on the exchange of SNAP benefits for cash.

3

13. On or about October 18, 2006, ALI JABER, as President of Jaber Enterprises, Inc., applied for authorization to participate in the SNAP food benefits program on behalf of Fajita's. As part of the application process, ALI JABER, on behalf of Fajita's, signed a "Food Stamp Grocer Education Confirmation" in which he confirmed that he would ensure that "…current and future owners, operators, corporate officers and clerks …" were properly trained as to what items could and could not be purchased using SNAP benefits with an EBT card.

## SNAP FRAUD CONSPIRACY

14. In the spring of 2012, an informant advised law enforcement that Fajita's was providing "cash back" on EBT SNAP transactions. Between March 2012 and June 2013, undercover SNAP recipients conducted approximately 20 monitored and recorded undercover "buys" at Fajita's. In approximately fifteen of these "buys," each of the undercover SNAP recipients (hereinafter "UC") requested and received cash back on an EBT SNAP transaction. UC cash-back transactions were conducted with ALI JABER, HADI JABER and DANIEL VALASQUEZ.

15. In the majority of these transactions, the UC requested a certain amount of money. The EBT card was swiped for the amount requested by the UC, plus an approximately 30% to 50% premium. The UC was given only the amount of cash that was requested. Fajita's withheld or kept the premium. The cash given to the UC, in a majority of the instances, was not rung through the cash register. Instead, in most cases the clerk took cash out of a wallet or pocket and gave it to the UC. A review of the EBT records from USDA's FNS program confirmed the transaction location for each of the UC buys as Fajita's, the specific beneficiary card swiped, and the gross amount of the transaction. The EBT monies were then routed to Fajita's corporate bank accounts via electronic deposits from USDA sources.

16. On or about Tuesday, May 8, 2012, a UC entered Fajita's with an undercover fully operational EBT card. The UC went to the cooler located in the middle of the store near the front counter and selected a Red Bull energy drink. The UC identified ALI JABER as being the only male clerk working behind the counter. The UC placed the Red Bull energy drink on the counter and pulled out his/her undercover EBT card and Florida Identification card. ALI JABER asked the UC how much he/she wanted. The UC asked to have ALI JABER ring up the energy drink first in order to check his/her balance. ALI JABER again asked the UC how much he/she wanted. The UC first replied that he/she wanted $150, but then almost immediately asked for $200. ALI JABER then swiped the UC's EBT card through the POS and the UC entered his/her PIN number. Once the transaction was approved, ALI JABER went into his front left pocket and pulled out a large amount of cash. ALI JABER took two (2) $100 bills from the money that was in his pocket, opened up the cash register, placed one of the $100 bills in the register and took out five $20 bills. ALI JABER then handed the UC (1) $100 bill and (5) $20 bills and a receipt for the transaction. The receipt showed that ALI JABER actually charged the UC's undercover EBT card $302.34 for the transaction.

17. On or about January 15, 2013 a UC entered Fajita's with an undercover fully operational EBT card. The UC approached the counter and while talking in a low tone, the UC asked HADI JABER if he/she could get cash on her EBT card. While scanning food items, HADI JABER advised him/her to come back later, when HADI JABER would have more cash. The UC asked what time should he/she come back and HADI JABER told the UC to come back after lunch. At approximately 1:00 p.m. on the same day, the UC returned to Fajita's with an undercover EBT card. While the UC entered the store he/she noticed an unknown Hispanic male completing a transaction with DANNY VELAZQUEZ who was behind the counter

working the register. As the UC stepped up to the counter, he/she could see shopping bags containing all of the items he/she picked up from his/her initial visit that day. While pointing at the bags, the UC told DANNY VELAZQUEZ that they belonged to him/her. DANNY VELAZQUEZ went into the bag and got the receipt. The UC asked DANNY VELAZQUEZ if he/she could obtain cash using his/her EBT card. DANNY VELAZQUEZ initially replied that they did not provide cash. The UC responded by indicating that he/she had gotten cash from the store in the past using his/her EBT card. DANNY VELAZQUEZ denied the UC claim, but then whispered in essence that there was a police officer standing behind the UC and that the UC could not get cash back because of the officer's presence.

18. On or about February 12, 2013, a UC entered Fajita's with an undercover fully operational EBT card. As the UC entered the store, he/she observed HADI JABER at the counter operating the cash register. The UC selected two items to purchase and took them to the cash register where HADI JABER was working. HADI JABER rang up the two items for a total of $3.48. During the transaction, the UC said to HADI JABER that he/she needed some money. HADI JABER asked how much, and the UC responded that he/she wanted $200. HADI JABER swiped the EBT card through the POS and the UC entered his/her PIN number. Once the transaction was approved, HADI JABER went into the register and pulled out two (2) $100 dollar bills and handed them both to UC. The receipt for the transaction showed that HADI JABER actually charged the UC's EBT card $303.48 for the transaction.

19. During the investigation, the following additional UC transactions occurred at Fajita's:

    a. On or about June 5, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $480.00 from which he gave $320.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

b. On or about September 21, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $149.00 from which he gave $100.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

c. On or about September 21, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $149.00 from which he gave $100.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

d. On or about October 5, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $74.99 from which he gave $40.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

e. On or about November 2, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $225.00 from which he gave $150.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

f. On or about November 20, 2012, at Fajita's in Palm Beach County, defendant DANIEL VELAZQUEZ caused the submission of a fraudulent SNAP redemption request in the amount of $181.66 from which he gave $100 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

g. On or about November 28, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $59.99 from which he gave $40.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

h. On or about December 28, 2012, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $75.00 from which he gave $50.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

i. On or about January 9, 2013, at Fajita's in Palm Beach County, defendant DANIEL VELAZQUEZ caused the submission of a fraudulent SNAP redemption request in the amount of $85.49 from which he gave $50.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

j. On or about January 16, 2013, at Fajita's in Palm Beach County, defendant HADI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $299.87 from which he gave $200.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

    k. On or about January 25, 2013, at Fajita's in Palm Beach County, defendant HADI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $151.48 from which he gave $100.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

    l. On or about March 21, 2013, at Fajita's in Palm Beach County, defendant ALI JABER caused the submission of a fraudulent SNAP redemption request in the amount of $299.99 from which he gave $200.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

    m. On or about June 25, 2013, at Fajita's in Palm Beach County, defendant DANIEL VELAZQUEZ caused the submission of a fraudulent SNAP redemption request in the amount of $330.00 from which he gave $220.00 in cash to an undercover SNAP recipient in violation of USDA rules and regulations.

20. In addition to the UC transactions, video and photographic surveillance was conducted in the area of Fajita's market from on or about April 13, 2012 to April 30, 2012; May 1, 2012 to June 10, 2012; July 1, 2012 to July 11, 2012 and March 17, 2013 to June 25, 2013. Through physical and video surveillance, customers were documented entering and exiting Fajita's. EBT records for those time frames were then analyzed, noting the dates and times of all EBT transactions over $200. Approximately 100 different EBT recipients, many of whom conducted EBT transactions at Fajita's on multiple occasions, were tracked and identified. Video and photographic images of customers were reviewed for the time frame immediately before and after each of the $200 or more transactions. Further review of the photographic and video evidence documented that the customers from the above-noted transactions came out of Fajitas with little or no groceries. Video and photographic review also confirmed that none of the customers returned to retrieve items from the store within a short period of time. Of these tracked transactions, the average time a customer was in the store was approximately 3-8 minutes. The longest period of time noted by law enforcement engaged in

this investigation between a customer going in and coming out of Fajita's was approximately 20 minutes.

21. As an example, surveillance established that on a particular day, customer SDH entered Fajita's at 9:32 a.m. SDH's identity was determined by comparing the name and the address on her Florida Driver's License with the name and address to which her EBT card and, separately, her EBT PIN number were sent. All three had the same name and address. There is no record of SDH reporting either her Driver's License or her EBT card stolen. An EBT time stamp of 9:35 a.m. was recorded for a transaction amount of $603.50 on SDH's card. SDH was observed departing the store with only a bottled drink at 9:35a.m. In addition, the video evidence of the person making the transaction correlated to the general description of SDH on her Florida Driver's License. This evidence is clearly inconsistent with a customer using an EBT card to purchase $600 worth of eligible food items, but is consistent with the cash back scheme established through this investigation.

22. Jaber Enterprises, Inc. bank records from approximately 2009 through April 2013 confirm approximately $6 million dollars in total deposits from EBT sales at Fajita's. A review of FNS records evidencing the EBT transactions for the same period generally corroborates the deposit information. Some of the $6 million in EBT transactions may be legitimate. Despite this, conservative estimates of the amount of fraud have been calculated. In one methodology, Jaber Enterprises bank records were reviewed. All payments to what appear to be store vendors who would qualify under the EBT program (such as meat and produce vendors) were identified. A mark-up of 35% was used to compute the sales price. A fraud loss of approximately $2.8 million was calculated by establishing the difference between gross EBT transactions and the estimated purchases from qualified vendors. Alternatively, a

comparison of the average total monthly transactions in medium-sized grocery stores in the state of Florida from November 2010 to April 2013 was compared to Fajita's monthly redemptions for that time period. Investigators compared Fajita's sales to medium-sized grocery stores in Florida because Fajita's is self-described as a medium-sized grocery store in certain SNAP documentation. Despite this self-description, surveillance and other investigative activities suggests that the store appears to be more consistent with a small sized grocery store. Using this alternative methodology of comparable medium-sized grocery sales, the amount of fraud was conservatively estimated to be approximately $3.8 million.

23. In what appears to be an effort to "cash out" the monies wired into the company bank account sourced from the EBT transactions, between in or around 2009 and until in or around April 2013, HADI JABER, along with his brother, ALI JABER, engaged in a pattern of withdrawing cash in amounts of less than $10,000 in an apparent attempt to circumvent the filing of Currency Transaction Reports ("CTR's"). In all, the two Jaber brothers made over seventy cash withdrawals, the majority of which were in amounts under $10,000, totaling in excess of $1.7 million. In some cases, the withdrawals were separated by a day or two; in others, the withdrawals were made on the same day. HADI JABER made withdrawals by writing checks either to himself or cash, all of which he endorsed. ALI JABER did the same thing by writing checks to himself. Depicted in the table below are selected transactions that illustrate the pattern of withdrawal based upon the investigation thus far:

| Institution | Date | Check No. | Amount | Endorsed by |
| --- | --- | --- | --- | --- |
| TD Bank xx3456 | 12/19/2009 | 1703 | $5,370 | HADI JABER |

| | | | | |
|---|---|---|---|---|
| TD Bank xx3456 | 12/20/2009 | 1704 | $5,000 | HADI JABER |
| TD Bank xx3456 | 1/2/2010 | 1746 | $5,000 | HADI JABER |
| TD Bank xx3456 | 1/2/2010 | 1747 | $7,000 | HADI JABER |
| TD Bank xx3456 | 1/2/2010 | 1748 | $4,500 | HADI JABER |
| PNC Bank xx8753 | 8/25/2011 | 2651 | $9,200 | HADI JABER |
| PNC Bank xx8753 | 8/29/2011 | 2654 | $9,500 | HADI JABER |
| PNC Bank xx8753 | 12/12/2012 | 3917 | $9,000 | HADI JABER |
| PNC Bank xx8753 | 12/14/2012 | 3926 | $9,000 | HADI JABER |
| PNC Bank xx8753 | 6/10/2010 | 1392 | $4,000 | ALI JABER |
| PNC Bank xx8753 | 6/11/2010 | 1395 | $7,000 | ALI JABER |
| PNC Bank xx8753 | 5/10/2011 | 2366 | $9,000 | ALI JABER |
| PNC Bank xx8753 | 5/10/2011 | 2375 | $8,000 | ALI JABER |
| PNC Bank xx8753 | 8/13/2012 | 3591 | $2,000 | ALI JABER |
| PNC Bank xx8753 | 8/13/2012 | 3592 | $8,000 | ALI JABER |
| Wells Fargo xx8769 | 7/8/2013 | 1062 | $4,788 | ALI JABER |
| Wells Fargo xx8769 | 7/8/2013 | 1063 | $7,000 | ALI JABER |

24. In addition to monies withdrawn by HADI JABER and ALI JABER, Jaber Enterprises, Inc. bank records also show over $100,000 in checks written to M. J., current President of Jaber Enterprises, Inc., and brother of HADI JABER and ALI JABER. Law enforcement sources show M. J. currently residing in Massachusetts.

25. Jaber Enterprises, Inc. also wrote over $30,000 in checks to City Mobile Corp between approximately 2009 through April 2013. According to State of Florida records, HADI

11

JABER was listed as the initial Incorporator and President of City Mobile Corp when it was formed in 2009. City Mobile Corp is currently listed as an inactive corporation, dissolved as of September 24, 2010. The principal address listed for City Mobile Corp, as well as the address for HADI JABER as the Registered Agent and President of City Mobile Corp, is 3921 10th Ave North, Lake Worth, Florida, which is a common listed address of Fajita's. The Articles of Incorporation for City Mobile Corp state that its purpose is the sale of cell phones, calling cards, accessories and more.

26. Jaber Enterprises, Inc. bank records also show over $500,000 in wires sent overseas to various persons and businesses. Specifically, between in or about December 2011 through in or about April 2013, approximately $179,000 was wired from the corporate account of Jaber Enterprises, Inc. to an account in Beirut, Lebanon in the name of ALI JABER. In addition, between 2009 and in or about July 2013, over $200,000 in wires was sent to H. A. in Beirut, Lebanon. Although law enforcement has not identified H. A., ALI JABER's wife is named Z. A. J., this name being fully known to law enforcement, suggesting a familial connection of some kind. In addition, between 2009 and 2012, wires were sent from the Jaber Enterprises, Inc. to accounts in Canada, as follows: approximately $61,000 wired to A. M. E. I.; approximately $33,000 to O. I.; approximately $33,000 to M. Construction; and approximately $20,000 to N. A.

27. Based upon the evidence described above, there is probable cause to believe that ALI JABER, HADI JABER and DANIEL VELAZQUEZ did knowingly conspire to defraud an agency of the United States, to wit, the USDA; in violation of 18 U.S.C. § 371.

FURTHER AFFIANT SAYETH NAUGHT

_____
HANJARATU SMALL
United States Department of Treasury,
Internal Revenue Service, Criminal Investigation

Sworn to an subscribed before me,
in West Palm Beach, Florida
this  9th  day of December, 2013.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 13-8506-DLB

### BOND RECOMMENDATION

DEFENDANT: Hadi Jaber

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _Carolyn Bell_
AUSA: Carolyn Bell

Last Known Address: ____

____

____

What Facility: ____

Agent(s): Special Agent Hanjaratu Small
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)
IRS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 13-8506-DLB

### BOND RECOMMENDATION

DEFENDANT: Ali Jaber

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Carolyn Bell

Last Known Address:    257

What Facility:

Agent(s):    Special Agent Hanjaratu Small
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
IRS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 13-8506-DLB

### BOND RECOMMENDATION

DEFENDANT: Daniel Velazquez

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: *Carolyn Bell* (signature)
AUSA:   Carolyn Bell

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   Special Agent Hanjaratu Small
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
IRS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.  13-8506-DLB

UNITED STATES OF AMERICA

vs.

ALI JABER, HADI JABER, and
DANIEL VELAZQUEZ

      Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?

   _____ Yes    __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?

   _____ Yes    __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____/s/ Carolyn Bell_____
CAROLYN BELL
ASSISTANT UNITED STATES ATTORNEY
Admin No. A5500286
500 S. Australian Avenue, Suite. 400
West Palm Beach, Florida 33401-6235
Tel: (561) 820-8711
Fax: (561) 659-4526
E-mail: Carolyn.Bell@usdoj.gov